UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Jeffrey Willis,          ) | |
|    Plaintiff             ) | |
|                          ) | |
|        v.                ) | Case No. 11-1208 |
|                          ) | |
| BNSF Railway Company,    ) | |
|    Defendants            ) | |

ORDER AND OPINION

Now before the Court is the Defendant's motion for summary judgment [#46]. The motion is fully briefed and I have carefully considered the parties' submissions. As stated herein, the motion is granted in part and denied in part.

I. JURISDICTION AND VENUE

This case is filed under the Federal Employers' Liability Act, 45 USC §51 et seq ("FELA"). This Court therefore has jurisdiction over the subject matter of this dispute pursuant to 28 USC 1331. Venue was not challenged in the Answer or raised by motion, so any issue as to venue has been waived. FRCP12((h)(1).

II. SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co, Ltd v Zenith Radio Corp*, 475 US 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FRCP 54(c); see also *Jay v Internet Wagner Inc*, 233 F3d 1014, 1016 (7th Cir2000); *Cox v Acme Health Services*, 55 F3d 1304, 1308 (7th Cir 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v Liberty Lobby, Inc*, 477 US 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. *Waldridge v American Hoechst Corp*, 24 F3d 918, 922 (7th Cir1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, *Erdman v City of Ft. Atkinson*, 84 F3d 960, 961 (7th Cir 1996); *Vukadinovich v Board of School Trustees*, 978 F2d 403, 408 (7th Cir 1992), cert denied 510 US 844 (1993); *Lohorn v Michal*, 913 F2d 327, 331 (7th Cir 1990); *DeValk Lincoln-Mercury, Inc. v Ford Motor Co*, 811 F2d 326, 329 (7th Cir 1987); *Bartman v Allis Chalmers Corp*, 799 F2d 311, 312 (7th Cir 1986), cert denied, 479 US 1092 (1987), and construing any doubts against the moving party. *Adickes v S. H. Kress & Co.*, 398 US 144 (1970); *Trotter v Anderson*, 417 F2d 1191 (7th Cir 1969); *Haefling v United Parcel Service, Inc*, 169 F3d 494, 497 (7th Cir 1999).

The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. *Piscione v Ernst & Young, L.L.P.*, 171 F3d 527, 532 (7th Cir 1999). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v Village of Winnetka*, 371 F3d 992, 1001 (7th Cir 2004). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., *Jordan v Summers*, 205 F3d 337, 342 (7th Cir 2000).

If the undisputed facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. *Hedberg v. Indiana Bell Tel. Co.*, 47 F3d 928, 931 (7th Cir. 1995), citing *Anderson*, 477 US at 248. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. *Celotex*, 477 US at 322; *Waldridge*, 24 F3d at 920.

## III. UNDISPUTED FACTS

The following statement of the facts in this matter is taken from the motion, response and reply, as well as from the evidence submitted in support. In addition, the ruling from an Order entered March 7, 2013 is also taken into consideration. That ruling denied the Defendant's motion to bar plaintiff's treating physician, Dr. Crickard, from giving an expert opinion regarding causation. A significant portion of this motion for summary judgment relies on the now-unsupported argument that Plaintiff has no causation evidence; the Court has therefore simplified the material facts by eliminating those that are relevant only to that now-moot issue.

Plaintiff Jeffrey Willis was employed by Defendant BNSF Railway Company for years. On the morning of April 22, 2009, he was working as a conductor. He was attempting to set (or tie down) a handbrake, a process that entails turning a circular wheel clockwise to tighten brake shoes against the wheels of a railcar. He turned the wheel far enough to get it "hand tight," and then attempted to "cinch it up" tighter. The wheel slipped, travelling further than he was expecting it to. He felt a "pop" and "uncomfortableness" in his right shoulder[1]. He was then able to continue and set the brake.

Willis called the BNSF trainmaster, Dave Nickles, later that day and described what had happened. On the next day, he filled out a Personal Injury Report. Among other information the

---

[1] He was subsequently treated for shoulder injuries. His injuries are not at issue in this motion.

Report required, it asked "Was there any defect/malfunction/problem of/with the equipment or work procedures. Willis checked the "NO" box and added "Not to my knowledge."

Following Willis' oral and written reports, BNSF inspected the hand brake on April 24, setting and releasing it 3 times with no problems. It was re-inspected on April 28; it set and released normally, so no repairs were made.

Setting a hand brake was a routine part of Willis' everyday duties as a conductor. He had received safety training on the proper procedure for setting hand brakes; he felt his training was "adequate." He knew and had been tested on BNSF's safety rules, one of which advised, "Watch for brake chain to bunch or slip unexpectedly." In fact, Willis had previously experienced slippage when setting the hand brake. It was not an unusual occurrence, and he estimated that handbrakes slipped about half the time they were being set.

The Trainmaster Nickles knew that chains might bunch during hand brake operation, and he said that it happens frequently enough that BNSF warns employees to watch for it. He also noted that an employee's position while tying a hand brake is such that he is unable to see whether the chain is binding, because it wraps up inside the wheel housing. Several other employees agreed that bunching or slipping is not visible while the brake is being tied.

Plaintiff filed this two-count action, alleging a negligence action under the Federal Employees Liability Act (FELA) and an action for violation of Federal Safety Appliance Act (FSAA). In Count I, he alleges the following negligent acts: failure to provide him with a reasonably safe place to work; failing to inspect, maintain and repair its cars and equipment including handbrakes; negligently assigning him to work on a car that was dangerous and unsafe; failed to warn him of the dangers; failure to adopt, install, implement and enforce safe methods

4

and procedures. In Count II, he alleges that BNSF used a car that was "defective and unsafe in direct violation of [FSAA}; the specific violation is not cited.

Plaintiff's mechanical expert Gary Mallen, testified that the fact the handbrake bunched on this occasion did not warrant placing a "bad order" on the handbrake to take it out of service. He noted that doing so "would tie up half the cars in the country." Willis himself agreed with this assessment. Mallen also testified that the brake was inefficient for the brief instant that it slipped but then subsequently became efficient again.

This motion for summary judgment followed completion of all discovery.

## IV. FELA AND FLSAA

A. FELA Claim (Count I)

FELA provides, in pertinent part, that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in [interstate] commerce," 45 U.S.C. § 51, and grants compensation to railroad employees for work-related injuries if "such injury or death [results] in whole or part from the negligence of any officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track ... or other equipment," *id.*

FELA's tort remedy holds a rail carrier liable for the reasonably foreseeable negligence of its officers, agents and employees. *Lancaster v Norfolk and Western Railway Co.*, 773 F2d 807, 813 (7th Cir 1985), cert denied, 480 US 945 (1987). It is a general negligence statute that "neither prohibits nor requires specific conduct by a railroad." *Waymire v Norfolk & Western Railway Co.*, 218 F3d 773, 775 (7th Cir 2000). Rather, it imposes a general duty on railroads to provide a safe workplace. *McGinn v Burlington Northern Railroad Co.*, 102 F3d 295, 300 (7th Cir 1996)[citations omitted]. Part of that duty requires the railroad to take "reasonable

5

precautions to inspect the workplace and protect its employees from possible danger." *Deans v CSX Transportation Inc.*, 152 F3d 326, 330 (4th Cir 1998). Even in light of that duty, however, the plaintiff still carries the burden of proving some act of negligence by the carrier. *Id*.

A plaintiff must ultimately prove some act of negligence by the railroad. *Holbrook v Norfolk Southern Railway Co.*, 414 F3d 739, 742 (7th Cir 2005). That negligence can either be an act or omission that constitutes negligence under the common law or a violation of FSAA. In order to survive a motion for summary judgment, a plaintiff must provide sufficient evidence to create a genuine factual issue regarding the elements of a negligence claim – foreseeability, duty, breach and causation. See, *Myers v Illinois Central Railroad Co.*, 679 FSupp2d 903, 917 (CDIL 2010), affirmed, 629 F3d 639 (7th Cir 2010).

To establish foreseeability, a plaintiff must show that the employer had either actual or construction notice of a defective or dangerous condition that created a potential for harm. *Williams v National Railroad Passenger Corp.*, 161 F3d 1059, 1062-63 (7th Cir 1998); *Holbrook*, 414 F3d at 742.

In Count I, Plaintiff has alleged a number of failures that, if proven, would constitute common law negligence. In its motion, Defendant asserts that the FELA claim fails because Plaintiff has no evidence to support any of these assertions.

First, Defendant asserts that, as demonstrated by the testimony of Plaintiff and his expert, there is no evidence that the handbrake in question was itself defective. Because there was no defect, BNSF argues that it did not have notice of a condition that would create a potential for harm. This also means, according to the railroad, that an inspection would neither have revealed nor cured the problem with the handbrake.

Defendant relies on *Deans v CSX Transp., Inc*., 152 F3d 326, 330 (4th Cir 1998), for the proposition that, absent a showing that a prior inspection would have shown a defect in the hand brake, the suggestion that the railroad was negligent is mere speculation. The facts in *Deans* involved a handbrake that would not release. In the process of trying to get the brake to release, the plaintiff was injured. A subsequent inspection of the brake found that it was defective.

Those facts are quite different than the ones before this Court, where everyone – the railroad and its employees - knew how the brake operated and that it frequently slipped. The tendency to slip was deemed not a "defect" but rather simply a necessary consequence of the design of the brake – it operated via tightening a chain, and chains have a tendency to bunch.

The fact that it was not "defective" only means that it was in its ordinary condition. It does not mean it was safe.

The complaint contains allegations of negligence beyond a defective brake, including the allegation that the slippage problem rendered his workplace unsafe. There is evidence of foreseeability, because BNSF clearly had notice of the slippage problem. A jury should be the one to decide whether the slippage problem was the type of "dangerous condition" that created a potential for harm to employees. The motion for summary judgment as to Count I is denied.

B. FSAA claim

The FSAA does not itself create a private right of action; Instead, it allows employees injured by violations of the FSAA to sue under FELA. *Crane v Cedar Rapids & Iowa City Railway Co.*, 395 US 164 (1969). A violation of FSAA is negligence as a matter of law. *Urie v Thompson*, 337 US 163, 189 (1949).

FSAA imposes an absolute duty on railroads to provide safe equipment, and equipment that fails to perform as required by the FSAA is an actionable wrong, "in no way dependent upon

negligence and for the proximate results of which there is liability – a liability that cannot be escaped by proof of care or diligence." *DeBiasio v Illinois Central RR*, 52 F3d 678, 683 (7th Cir 1995), citing *O'Donnell v Elgin J&E Railway Co.*, 338 US 384, 390 (1949).

The FSAA imposes a requirement that all railroad cars be equipped with "efficient" hand brakes. *Myers v Reading Co.*, 331 US 477 (1947). "Efficient" means "adequate in performance; producing properly a desired effect." *Id* at 483. "Inefficient" means "not producing or not capable of producing the desired effect; incapable, incompetent, inadequate." *Id.* In *Myers*, the jury had returned a verdict for the plaintiff. He had claimed that his injuries were caused by a malfunctioning hand brake on a railcar The Court noted two ways to show "inefficient" brakes: proof of a defect and proof of a "failure to function in the normal, natural, and usual manner." *Id* at 484. Moreover, if there is proof that the brake failed to work properly (efficiently) at the time of the incident, an FSAA violation has been shown, even if the mechanism worked efficiently both before and after the occasion in question. *Id.* Because the plaintiff, an experienced rail man, testified that the brake had not worked as it ordinarily did, the Supreme Court held that the jury was entitled to find a statutory violation sufficient to support its verdict.

There was no defect in the handbrake in the case now before the Court. In order to show that the handbrake was "inefficient," Plaintiff must therefore produce sufficient evidence to create a question as to whether the handbrake failed to function in the normal, natural, and usual manner. There is no such evidence. All the witnesses have acknowledged that the handbrake operated as it always did and that slippage was normal and natural.

Plaintiff counters this undisputed fact by asserting that harm was foreseeable and could have been prevented. While that argument is pertinent to the general negligence issue in the

8

FELA claim, it does not address the issue in the FSAA claim. It is the burden of the Plaintiff to come forward with evidence of inefficiency, and he has failed to do so.

## V. CONCLUSION

As stated herein, the motion for summary judgment is granted as to Count II and denied as to Count I. This case is set for a final pretrial conference in person on March 26, 2013 at 2:30 PM. No later than March 24th, the parties shall submit an agreed final pretrial order, including all attachments. In addition, any motions in limine shall be filed on or before that same date, with responses due 7 days thereafter.

ENTERED this 13th day of March, 2013.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATED MAGISTRATE JUDGE