UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jeffrey Willis,  )
    Plaintiff  )
  )
    v.  )    Case No. 11-1208
  )
BNSF Railway Company,  )
    Defendants  )
  )

## ORDER

Now before the Court is the Plaintiff's motion in *limine* (Doc. #66). This motion raises 13 issues. Defendant has filed a response, so the motion is fully briefed. The motion is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART, as follows:

1. Plaintiff asks that the Court not allow the jury to speculate about "alternate causes of Willis's shoulder pain" without supporting medical expert opinion. He asserts that the only medical causation expert is his treating physician, Dr. Crickard. Because BNSF does not have a counter-expert on causation, BNSF should not be allowed to ask the jury to speculate about other reasons (such as his weight) for his pain.

BNSF responds that it has no intention of asking the jury to speculate about alternate causes of Willis's shoulder injury about which no competent witness has testified. However, it asserts that it is permitted to make arguments about the causes of Willis's pain if they are supported by medical testimony in the case. BNSF further states that it is entitled to introduce evidence and make arguments regarding Willis's burden of proof on causation regarding credibility of causation witnesses.

It is a truism that the jury cannot be invited to speculate; its verdict must be based on the evidence. Until the Court hears the testimony of Willis's causation expert, however, it cannot

1

rule in a vacuum about arguments or evidence BNSF may or may not offer. Such matters will have to be determined during trial. The motion is denied; if the issue arises during trial, the matter can be addressed at that time.

2. Plaintiff asks the Court to treat this case as an "egg shell plaintiff" case rather than an apportionment case. Specifically, Plaintiff states that the evidence shows that Willis had a pre-existing condition that was asymptomatic prior to the underlying event. Given that fact, giving an eggshell instruction would be proper, while giving an apportionment instruction would be an error.

The "eggshell skull" doctrine provides that a tortfeasor takes its victim as it finds him. *Cobige v City of Chicago,* 651 F3d 780, 782 (7th Cir 2011); *Brackett v Peters*, 11 F3d 78, 81 (7th Cir 1993). "If a tortfeasor inflicts a graver loss on his victim than one would have expected because the victim had some pre-existing vulnerability, that it's the tortfeasor's bad luck." *Schmude v Tricam Industries, Inc.*, 556 F3d 624 (7th Cir 2009). Thus, a tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition. *Meyers v Wal–Mart Stores, East, Inc.,* 257 F3d 625, 632 (6th Cir 2001); *Figueroa–Torres v Toledo–Davila,* 232 F3d 270, 275–76 (1st Cir 2000); *Jordan v Atchison, Topeka & Santa Fe Railway Co.,* 934 F2d 225, 228–29 (9th Cir 1991); *Maurer v United States,* 668 F2d 98, 99–100 (2d Cir 1981) (per curiam). The eggshell doctrine can apply in FELA cases involving pre-existing conditions. *See Lancaster v Norfolk & Western Railway Co.,* 773 F 2d 807, 822 (7th Cir 1985).

However, a tortfeasor cannot be held liable for damages that it did not actually cause. Consequently, a tortfeasor is liable for the aggravation of a preexisting condition, including "acceleration of a progressive disease." *Reising v United States*, 60 F3d 1241, 1244 (7th Cir 1995), quoting *Gruidl v Schell*, 519 NE2d 963, 967 (Ill App 1988). Where the damages are limited to aggravation, the plaintiff can recover only for that part of his suffering that was "activated, aggravated or accelerated" by the negligence. *Reising*, 60 F3d at 1244, quoting *Gruidi*, 519 NE2d at 967-68.

Which of these two doctrines applies in a given situation is sometimes confusing. In a recent FELA case against BNSF, a Colorado state court thoroughly discussed the two doctrines and when they should be reflected in jury instructions. *McLaughlin v BNSF Railway Company*, 300 P3d 925, 937 (CO APP 2012), cert denied, 2013 WL 1192590 (CO). The Court was specifically confronted with the propriety of giving *both* instructions to the jury. The Court found that there were two circumstances when giving both an eggshell instruction and an aggravation instruction would be proper: (1) when there was conflicting evidence of whether the pre-existing condition was dormant or asymptomatic before the injury; and (2) when the pre-existing condition was symptomatic before the injury, but the aggravation to the symptoms was greater than it would have been in the absence of the pre-existing condition.

In the case before this Court, the Court has been pointed to no evidence at all of prior symptoms. There is therefore no conflicting evidence on this point: Jeffrey Willis was asymptomatic before this incident. Neither situation applies, so (assuming arguendo that *McLaughlin* governs) giving both instructions is not warranted. Instead, the Court must consider which of the two is proper.

The Seventh Circuit has reviewed a similar fact situation. In *Reising, supra*, the plaintiff suffered from bulging discs prior to the accident, even to the point of being symptomatic with back pain. Following the accident, however, new pain appeared, namely pain that radiated down his leg. The trial court had found that the evidence showed "some limited acceleration of aggravation" of the back problems but was unable to determine whether the new pain would have eventually occurred as his condition progressed. The Seventh Circuit found that the determination to apply aggravation theory was not error. 60 F3d at 1244.

In *Reed v Union Pacific Railroad Co.*, 185 F3d 712 (7th Cir 1999), the evidence was undisputed that the plaintiff suffered from previously-undiagnosed and asymptomatic degenerative disk disease. The plaintiff presented evidence of this condition and argued that the eggshell plaintiff instruction should be given. Defendant submitted the evidence to rebut causation and to argue that the injuries were the result not of any negligence but of the condition itself. The Seventh Circuit found that an aggravation instruction should have been given.

If a plaintiff has a coronary condition that makes him more likely to suffer a heart attack, and the tortfeasor's conduct results in a heart attack, the tortfeasor is liable for all damages resulting from the that heart attack, even though a person without the condition would not have suffered a heart attack. That is the eggshell plaintiff doctrine. If a plaintiff has a deteriorating shoulder condition and the tortfeasor's conduct causes pain in that shoulder, then the tortfeasor is liable for the pain and for any acceleration of the condition, but is not liable for the underlying condition. That is the aggravation doctrine.

There is no dispute in the case before this Court that Mr. Willis suffered from a pre-existing condition[1]: his physician observed a bone spur and subsurface fraying of his right rotator cuff, conditions that were not acute injuries caused by the incident in question but were rather the result of shoulder stress and "wear and tear" over the years. BNSF is not liable for the existence of those conditions on the day when Plaintiff was setting the handbrake, when he first felt pain. BNSF is liable for all aggravation of those conditions, including pain that ensued. The Plaintiff's motion to give the eggshell plaintiff jury instruction is therefore denied.

3. Plaintiff asks that Kathleen Burds' "undisclosed expert opinions" be excluded. Ms. Burds is a case manager whose job was to contact injured BNSF employees, advise them about their benefits, and "aid them through the recovery process." (BNSF Response, Doc. #71 p.5). She oversaw Plaintiff's recovery and kept a record of her communications with Willis and with his medical providers.

According to Plaintiff, BNSF elicited "expert opinions" from Ms. Burds during her recent deposition. In particular, Plaintiff complains about Burds' statement that Willis exceeded the Estimated Disability Duration (EDD) for his condition. For this statement, she relied on her training and experience, on a review of EDD guidelines derived from medical literature, and on her review of Willis's medical records. This, says Plaintiff, makes Burds, (who is, emphasizes Plaintiff, a nurse) an expert witness on this point. Because she was never disclosed as an expert, Plaintiff asserts that her testimony is inadmissible under Rule 26(a)(2)(A); (a)(2)(C).

---

[1] The Court rejects Defendant's effort to make a substantial distinction between a pre-existing "condition" (which makes a plaintiff more susceptible to injury) and a pre-existing "injury" which makes him more susceptible to "re-injury or further injury"). No case is cited for this proposition, and none of the cases cited by Defendant support the distinction.

According to Defendant, Burds is a lay witness whose testimony simply conveyed her personal observations and explained her notes. EDD, explains BNSF, is a formula that provides estimated lengths of time that a particular injury would keep an employee out of work, similar to an annuity table for insurance or an attendance record for employers.

I conclude that Burds is not an expert witness governed by Rule 702. Her testimony is not the type of scientific, medical or technical knowledge that Rule 702 governs. Instead, she has stated that Willis exceeded the EDD based on what she has learned in her job as a case manager. She offered no testimony about the validity of EDD. She simply testified that based on the EDD formula, Willis was on leave longer than expected. That is not opinion testimony. It is testimony about why she did what she did in the context of the facts before her.

Even if her testimony was opinion testimony, it would be governed by FRE 701, not FRE 702. There is a difference between "opinion testimony" and "expert testimony." Lay witnesses can offer opinion testimony without being converted into expert witnesses. Opinion testimony from a lay witness is limited to opinions that are rationally based on the witness's perception; helpful to clearly understanding the testimony or to determining a fact in issue; and not based on scientific, technical or other specialized knowledge within the scope of Rule 702. FRE 701. Clearly Burds' testimony falls within this category even if it is considered an opinion.

The parts of FRCP 26 cited by Plaintiff deal only with witnesses who are offering "expert" testimony. Plaintiff's motion to bar Burds' testimony is denied.

4. Plaintiff asks the Court to bar "other undisclosed expert opinions." Obviously, if BNSF offers true "expert" testimony that has not been previously disclosed, that testimony is inadmissible and

6

will not be allowed. To the extent that "opinion" testimony by lay witnesses may be offered, the Court has insufficient information to make a ruling at this time. The motion is therefore denied.

5. The Court has previously dismissed Plaintiff's FSAA claim. The motion to allow Plaintiff to present evidence of this claim is therefore denied.

6. Plaintiff asks the Court to bar the receipt into evidence of Plaintiff's medical records on the basis of FRE 403. This Rule provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FRE 403.

Plaintiff asserts that because his treating medical providers testified about his treatment there is no probative value in admitting these records. Instead, argues Plaintiff, there is a substantial danger that the jury will waste time examining records that have already been explained and that the jury might be unfairly prejudiced against him by focusing on isolated records rather than the totality of medical testimony.

Plaintiff's argument – that his medical records contain no probative value – is without merit. His witnesses relied at least in part on those very records for their testimony. Without those records, his witnesses likely would have had little or no recollection of the specific information which Plaintiff sought to elicit from them. This value is compounded by the fact that BNSF also used those records to cross examine these witnesses. There is obviously significant probative value to the records to the extent they were used in the direct and cross-examination of the providers.

Plaintiff's argument that the jury will waste time is not enough to outweigh the probative value of these records. If they are relevant – and there is no challenge to relevance – then their presenting them to the jury for examination is not asking the jurors to waste their time.

There is similarly no merit to Plaintiff's contention that he will be prejudiced because the jury may focus on isolated records rather than on the totality of medical testimony. These are Plaintiff's own medical records. If these records relate to diagnosis, treatment, and recovery related to the incident underlying this complaint, then the Court fails to see how examination of the records will cause prejudice. Of course the jury must look at the entirety of the evidence, and they will be properly instructed on that matter. This speculative and highly-debatable prejudice is far from sufficient to justify exclusion of the records. As the Seventh Circuit has noted,

> Relevant evidence is inherently prejudicial; only where the unfair prejudice created by its admission substantially outweighs its probative value should the trial court, in the exercise of its discretion, exclude the evidence.

*United States v Bradley,* 145 F3d 889, 893 (7th Cir 1998) (citing, for example, FRE 403).

In the alternative, Plaintiff contends that if any of the records are admitted, then the entirety of his records should be admitted (from the date of injury on 4/22/09 to the date he returned to work on 5/10/10). For this proposition, he relies on FRE 106. This Rule provides: "If a party introduces all or part of a writing…, an adverse party may require the introduction … of any other part … that in fairness ought to be considered at the same time."

This argument too is rejected. The only parts of the medical files that should come in are those that support (or rebut) the testimony given by the providers. Giving the jury a stack of records only some of which were discussed in testimony would be confusing and a waste of time. It is simply not necessary under this circumstance to interpret Rule 106 as requiring this result. The Rule does not define what is or is not an entire record. At least one other court has

refused to interpret the Rule is requiring that every document in a file be admitted simply because they are stored in the same folder.

> [I]n determining the admissibility of various units contained in document collections, a preliminary decision must be made as to what grouping constitutes a fair and reasonably complete unit of material. In some cases, that unit may be a single document; in others, all the documents, or in a third class, some subpart of a document or collection.

*US v Boylan*, 989 F2d 230 257 (1st Cir 1990).

In this case, I find that a "fair grouping" would be medical records that correspond to a specific treatment date, and that any grouping of records used in the direct or cross examination of the medical providers is admissible. The motion to exclude such records is denied, and the motion to admit other records is also denied. This ruling, however, does not preclude the possibility at trial that admission (or exclusion) of a particular record may be necessary to ensure fairness or completeness, given the context in which that possibility arises.

7. Plaintiff asserts that BNSF should not be permitted to argue assumption of the risk. BNSF agrees. BNSF reminds the Court that contributory negligence is an issue in the case, and Willis's own negligence is admissible. With that distinction made, the motion is granted. No evidence of assumption of risk is admissible.

8. BNSF does not object to Willis's argument that his criminal history or prior bad acts should be excluded. The motion is granted as to this issue.

9. Plaintiff asks the Court to exclude any evidence of or reference to investigations and discipline of Willis for unrelated incidents. BNSF agrees generally but asserts that evidence related to the investigation of the incident of 4/22/09 is relevant to both the Plaintiff's claims and to BNSF's

9

defenses. Plaintiff does not address any distinction between the 4/22 investigation and any other investigation. I find that the investigation into the incident that forms the basis of this litigation is admissible, and to that extent the motion is denied. In all other respects, it is granted as to this issue.

10. Plaintiff asks the Court to bar evidence of and reference to Mr. Willis's prior physical injuries and psychological conditions that are unrelated to his right shoulder. BNSF does not oppose this part of the motion. It is therefore granted.

11. Plaintiff asserts that the Court should bar BNSF from presenting evidence of collateral source benefits. BNSF does not object to this bar, except to the extent that Plaintiff may open the door by introducing evidence of economic hardship as a result of medical bills. If such testimony is given, the Court will at that time consider the impact of the testimony. Because the hypothetical situation has not yet arisen, the Court states no opinion on that question. To the extent that the collateral source rule governs, the Court agrees and grants the motion.

Defendant also asserts that Plaintiff has not disclosed a computation of damages for his medical expenses and is therefore barred from putting on evidence of his medical expenses at trial. This issue has nothing to do with collateral source. It is raised as a separate issue in Defendant's motion in *limine*, which is considered in a separate Order entered this date. It need not be addressed in this Order.

12. Plaintiff asks that surveillance video taken by BNSF be barred. BNSF does not object, so long as such evidence (or reference thereto) is barred for both parties. The Court sees no video

surveillance tape listed as an exhibit to the proposed final pretrial order, so there appears to be no real dispute here. The motion is granted as to this issue.

13. Plaintiff asks that witnesses be sequestered from the courtroom. BNSF does not object. The motion is granted as to this issue.

    Entered: October 2, 2013

                              s/ John A. Gorman

                              John A. Gorman
                            U.S. Magistrate Judge