UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jeffrey Willis
    Plaintiff                    )
                                   )
                    v.        )       11-1208
                                   )
BNSF Railway Company         )
    Defendant              )
                                 )

ORDER

Now before the Court is the motion in *limine* (#69) filed by Defendant BNSF, as well as a subsequent document from BNSF titled "memorandum of clarification." (#75). Also pertinent to this motion is Plaintiff's memorandum responding to BNSF's clarification memo[1]. As stated herein, the motion, as modified by the memoranda, is granted in part and denied in part.

Before addressing the specific issues raised in the motion, the Court will address Plaintiff's contention that the part of this motion challenging the testimony of Plaintiff's expert Gary Mallen is essentially a *Daubert* motion that has been untimely filed. In the original scheduling order (see minutes of 9/27/11), no deadline was set for filing *Daubert* motions. There were several subsequent extensions of the original schedule; at no time did the Court set such a deadline. It was not until Defendant's timely-filed motion in limine that BNSF challenges to Mallen's testimony. There are two aspects to the challenges to Mallen: his opinions are barred by the order on summary judgment (Doc.#55, March 13, 2013), or they are barred because they were not disclosed in his Report.

---

[1] Plaintiff's memo also relates to Defendant's other Memorandum of clarification (#76), dealing with objections in transcripts that will be read at trial. Those issues are dealt with in a separate Order.

The better practice would certainly have been to file a *Daubert* motion earlier than BNSF did here. Mallen's deposition was taken a year ago, and the summary judgment order was entered over 6 months ago. Nonetheless, the Court has never set a deadline for filing *Daubert* motions, and there is nothing in the Rules or in *Daubert* itself or its progeny that would mandate a finding of untimeliness. Finding the motion untimely would be a gross injustice. The Court will therefore consider the motion. In light of the extensive briefing on this issue, there is no need for oral argument.

The organization of this Order mirrors the organization of BNSF's motion. Headings and paragraph numbers are those contained in the motion.

## I. GENERAL

1. BNSF asks the Court to bar any suggestion or testimony that Plaintiff's children have been injured or sustained damages. Plaintiff does not oppose this. The motion is granted as to this issue.

2. BNSF asks that Plaintiff be barred from referring to this case as a "workers' compensation" case, or from stating that Plaintiff is not eligible for workers' compensation or did not receive compensation for the incident. In *Schmitz v Canadian Pacific Railway Co.*, 454 F3d 678 (7th Cir 2006), the plaintiff contended that the district court should have given a cautionary instruction. The context was slightly different in *Schmitz*, however, than it is here. In *Schmitz* the jury had asked whether the plaintiff received medical or workers' compensation benefits for his injury. The district court had declined to answer specifically, responding that such matters were "simply not before the court or the jury." The Seventh Circuit affirmed the district court, stating that such an instruction – that the plaintiff had "no means of recovery other than FELA" – could have

prejudiced the railroad and that the court's admonition that the matters were not before them "was appropriate." *Id* at 685.

In this case, there is no question from the jury; BNSF simply asks the Court to prevent Willis from bringing up the subject during trial. Although Plaintiff suggests that the jury should be advised of the law, that would be inconsistent with *Schmitz*. If and only if the matter is raised by the jury will they be properly admonished. If it is not questioned, jury instructions will be clear enough that no "clarifying" instruction will be necessary. The motion is therefore granted as to this issue.

3. BNSF asks that Willis be barred from making any reference to whether BNSF is insured or indemnified. Plaintiff does not oppose this. The motion is granted as to this issue.

4. BNSF asks that Plaintiff be barred from referring to BNSF's size, financial condition, corporate structure, ownership, solvency, or ability to pay. Plaintiff does not oppose this, noting only a possibility that BNSF might open the door to such references. The motion is granted. If the door is opened, Plaintiff of course has leave to bring the matter to the Court's attention and seek modification of this order.

5. BNSF asks that Plaintiff be barred from referring to or arguing that he incurred or paid medical or hospital bills or expenses. Plaintiff does not oppose this. The motion is granted as to this issue.

6. BNSF asks the Court to bar reference or argument regarding Congressional intent or purpose of FELA. Plaintiff responds that the Court should inform that jury about FELA's history and Congressional intent, explaining the statute's "basic principles and purpose." The Court declines to give such an instruction (and notes that Plaintiff has failed to even tender such an instruction). See, *Stillman v Norfolk & Western Railway Co.*, 811 F2d 834, 838(4th Cir 1987)(affirming district court's refusal to allow plaintiff to argue about Congressional intent). The motion is granted as to this issue.

7. Defendant asks the Court to bar reference, statements and argument about Plaintiff's financial expenditures, such as poverty or reduced standard of living. Plaintiff does not oppose this, so long as Defendant makes no suggestion that he is well off or that his financial situation was the incentive for filing this lawsuit. The motion is granted. If Defendant opens the door, Plaintiff may bring the matter to the Court's attention.

8. BNSF wants the Court to bar Plaintiff from commenting on the size of the law firm or number of attorneys in the law firm representing it. Plaintiff does not oppose this part of the motion. It is therefore granted.

9. BNSF wants Plaintiff barred from presenting evidence pertaining to other lawsuits or claims against BNSF. Plaintiff does not oppose the motion, stating it will approach the Court if BNSF opens the door to this type of evidence. The motion is granted.

10. BNSF asks that Plaintiff be barred from referring, arguing, or stating that the law firm represented BNSF in this suit regularly represents BNSF. Plaintiff does not oppose this motion. The motion is granted as to this issue.

11. BNSF asks that Plaintiff be barred from referring to punitive or exemplary damages. Plaintiff does not oppose this matter. The motion is granted.

12. BNSF asks the Court to bar reference to settlement discussions or communications between the parties to this suit. Plaintiff does not oppose the motion. It is granted.

13. BNSF asks that Plaintiff be barred from referring to motions in *limine* or other pretrial motions. Plaintiff does not oppose the motion as to motions in *limine* and makes no response with respect to other types of motions. The motion is granted.

14. BNSF asks that Willis be barred from suggesting, stating or attempting to argue that BNSF has failed to produce documents, that documents are missing, lost or destroyed, or that there was motion practice on discovery issues. Willis does not oppose this motion as long as the bar applies to both parties. The motion is granted as to both parties.

15. Defendant asks that Plaintiff be barred from referring to the railroad or to railroading as dangerous. Plaintiff responds that he must be able to present evidence and argument about "specific relevant dangers," because under FELA BNSF had a duty to provide Willis with a safe place to work. That requires, says Plaintiff, a level of care *"commensurate to the dangers of the*

*business,"* quoting *Atlantic Coast Line Railroad Co v Dixon*, 189 F2d 525, 527 (5th Cir) [emphasis added by Plaintiff], cert denied, 342 US 830 (1951). Plaintiff may of course refer to the dangers inherent in setting a hand brake, as that is the issue in this case. There is however, no relevance to this case of any other danger, so general references to dangers in the industry as a whole would be improper. The motion is granted in part and denied in part, as stated.

16. BNSF asks the Court to prevent Willis from questioning a potential juror about his or her personal experiences with a particular injury, treatment or duration of the injury, the effect of the injury on earnings or family, or similar efforts to elicit in front of the panel a personal accounting of that panel member. Willis responds that jurors' experiences with their own injuries or injuries of family members could have resulted in bias and strong feelings, so he should be allowed to *voir dire* on this issue.

The Court will ask the jury panel members if they or any member of their immediate family has suffered a serious injury. If the answer is affirmative, the Court will inquire about the nature of the injury and whether their experience with that injury – including treatment and recovery – will affect their ability to view the evidence in this case fairly and impartially. No further individual questioning by counsel beyond the Court's questions will be allowed without a bench conference before the questioning commences. To that extent the motion is granted.

17. BNSF asks for a bar of statements or evidence that it could have provided safer procedures or methods of work. Willis opposes this, asserting that if BNSF foresaw (or should have foreseen) that a method posed a danger to its workers, then it had a duty to reduce that danger. In *Stillman*, the Fourth Circuit held that the question for the jury was whether the railroad had exercised

reasonable care for the safety of its employees, *not* whether it could have employed a safer method of performing a specific procedure or method. 811 F2d at 838. In other words, the question is whether the hand brake was safe as it existed when Willis used it, not whether it could have been safer at that time. The quotations offered by Plaintiff do not contradict that holding.

That said, however, this issue is directly related to the issue raised below that BNSF has characterized as "Subsequent Remedial Measures." To the extent that BNSF intended this section (i.e.#17) to bar evidence of subsequent remedial measures, this section is denied; the admissibility of evidence of subsequent remedial measures is an issue governed by the section below with that title.

Plaintiff argues that this issue may be raised by BNSF in its proof of the affirmative defense of contributory negligence, namely that Willis's failure to use a safer method was evidence of that defense. BNSF cannot have it both ways; if this issue is raised, then of course Willis will be allowed to introduce evidence to dispute it. That issue, however, is not presently before the Court.

To the extent there may be some other type of evidence regarding "safer procedures," the Court lacks specific information and will not rule in a vacuum. This part of the motion is therefore denied, with leave to move for reconsideration if appropriate during trial.

## II. STANDARD OF PROOF UNDER FELA

18 and 19. In these paragraphs, BNSF points out that the only remaining claim is Count I, which alleges BNSF's negligence. As a result, BNSF asks the Court to bar any argument or statement that a violation of FELA is "negligence per se" or that BNSF is "strictly liable" for violations of FELA. Willis acknowledges the prior ruling on this question but asks the Court to revisit its

entry of summary judgment as to Count II; the Court declines to do so. In the absence of such action, Plaintiff does not oppose BNSF's motion. The motion is therefore granted.

### III. SUBSEQUENT REMEDIAL MEASURES

20-27. BNSF anticipates testimony that following Willis's injury BNSF made "brake sticks" available to its employees. Brake sticks allow an alternative method of setting and releasing hand brakes. Use of brake sticks is not a new technology or method; according to Plaintiff's expert, they have "been around" since the late 1980's.

BNSF asserts that this is a subsequent remedial measure barred by FRE 407. Moreover, BNSF asserts that expert testimony would be required on the question whether use of brake sticks would have made Willis's job safer, testimony that Plaintiff's expert Gary Mallen did not offer. In fact, at his deposition, Mallen said that the use of a brake stick would not have prevented Willis's injury and that there have been "a lot" of injuries involved with the use of brake sticks.

Plaintiff responds that subsequent remedial measures are admissible to prove "feasibility of precautionary measures, if controverted." In addition, Plaintiff asserts that the question does not require expert testimony; the jury should be allowed to exercise "common sense" in assessing the reasonable care and safe workplace issues. These arguments raise 2 questions: the applicability of Rule 407 and the need for expert testimony on the question.

Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence…This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving … feasibility of precautionary measures, if controverted…"

FRE 407. This Rule is intended to remove the "disincentive to take post-accident safety measures that would exist if the accident victim could introduce evidence of measures on the issue of the defendant's liability." *Probus v K-Mart Inc.*, 794 F2d 1207, 1210 (7th Cir 1986).

The Rule has exceptions, one of which applies here, namely that subsequent remedial measures are admissible to show the feasibility of other methods. Here, Willis wants to admit evidence about the use of brake sticks to show that this method was feasible at the time of Plaintiff's injury. With that limitation, evidence about the subsequent availability of brake sticks is not barred by Rule 407.

Nor is expert testimony needed for this limited question. It is not disputed that the method was feasible. Willis himself can testify about when the brake sticks became available to him, how it affects the way he ties a hand brake, if he uses this method consistently, and the like. The fact that Plaintiff's own expert testified in a manner that challenges the contention that this method is safer and/or would have prevented Willis's injury simply goes to the weight the jury might give to Willis's testimony. It does not affect its admissibility. Whether having this method in place would have made Willis's workplace safer is a straightforward matter for the jury to decide.

This ruling is strictly limited to the issue of feasibility. For these reasons, the motion is denied.

## IV. DAMAGES

28-30. Rule 26(a) required Willis to disclose a computation of each "category of damages." FRCP 26(a)(1)A)(iii). Willis disclosed a category of damages for lost wages and another for pain and suffering. He now apparently seeks to include in the damages for pain and suffering his "lost enjoyment of life." BNSF argues that because Willis disclosed only past lost wages and pain and

suffering, he should be precluded from offering evidence or argument regarding disability, loss of enjoyment, loss of a normal life, and loss of vitality

It is true that "loss of enjoyment of life" is not a *recovery* separate and distinct from pain and suffering. "Loss of enjoyment of life, however, can be a *component* of the category of damages known as "pain and suffering." As the Seventh Circuit's Pattern Instruction 9.04 illustrates, evidence of all of these aspects of "pain and suffering" may be included in the jury's determination of the proper amount to award for the category of "pain and suffering." The various components are not listed as separate lines in the damages instruction; the jury will award a single amount for the totality of these components.

Under the jury instruction cited above, "pain and suffering" may encompass loss of a normal life. BNSF has introduced no authority for the proposition that "category" as that word is used in Rule 26(a) means anything other than the "categories" that are encompassed by that Instruction. By disclosing a computation of his damages for "pain and suffering," Plaintiff adequately advised that each component of that "category" of damages was in issue. The motion is denied.

### V. CO-WORKER TESTIMONY

31. BNSF seeks exclusion of all testimony from co-workers regarding other incidents or accidents they may have witnessed or been involved in, unless that co-worker can show that he/she was in a similar position, used the same hand brake as Willis, and suffered a shoulder injury; and unless the testimony is offered as evidence of negligence, notice or causation. Willis responds only that such testimony bears on the issue of notice, so the Court will limit the following discussion in that way; such evidence cannot come in as proof of negligence or causation in Willis's case in chief.

BNSF cites three cases in support of this proposition; none are apposite. In *Holbrook v Norfolk Southern Railway Co.*, 414 F3d 739,746 (7th Cir 2005), the Court of Appeals upheld the District Court's exclusion of photographs of "similar hazardous" track conditions when there was no foundation that the tracks at the time of the incident were in the same condition as in the photographs. Track conditions may vary widely from place to place, with factors such as the surrounding environment, the weather, the age of the tracks all entering into the equation. Whether a railroad had notice of track conditions at one place has little to do with the notice they had about conditions at another place. Unlike track conditions, tying a hand brake is a discrete function. When the only issue is notice, it would be immaterial what specific injuries they sustained or which hand brake they were operating when completing that function. Multiple injuries performing the same function is relevant to BNSF's notice. This case does not support BNSF's position.

The second case is *Amatucci v Delaware & Hudson Railway Co*., 745 F2d 180 (2d Cir 1984). In that case the injury was a heart attack. It is not surprising that the court wanted to look at issues such as similar workplace conditions in order to decide whether the railroad had notice. Notice of a heart attack does not equate to notice of a dangerous condition in the workplace. This case too is inapposite.

In the third case, the issue was disease, not injury, and the testimony was being offered on the question of causation, not notice. *Marsee v US Tobacco Co.*, 866 F2d 319, 321-22 (10th Cir 1989). It provides no guidance on this question.

To the extent that the testimony of co-workers goes only to notice and is based on injuries or involvement with tying a hand brake, the testimony is admissible. BNSF is of course free to

cross examine the witness on whether there were distinctions in circumstances. Such matters do not preclude admissibility. The motion is denied.

32. BNSF also seeks to bar references by co-workers that BNSF could have provided safer methods of work or that the workplace was or is not as safe as possible. The cases cited stand for the proposition that proof of a safer alternative is not necessarily proof of negligence; the relevant inquiry is whether the railroad provided a reasonably safe environment, not whether procedures could have been made safer. This issue overlaps to a certain degree with the issue of subsequent remedial measures, discussed above: if the evidence BNSF seeks to bar falls within the ruling above, then the Court's ruling above on the use of brake sticks applies and this part of the motion is denied. In all other respects, this part of the motion is granted.

33. BNSF raises the spectre that some of Willis's co-workers who may testify about similar problems with tying a hand brake never made a complaint to BNSF. Because such co-worker testimony is limited to the issue of notice, any testimony on this question by co-workers must be preceded by a showing that BNSF was made aware of the incident in some concrete way. Absent such a showing, the testimony is barred.

34. BNSF argues that testimony of co-workers about similar incidents cannot include testimony that the incident with the hand brake was the "cause" of their injuries. Plaintiff does not address this question either, probably because testimony about similar issues is limited to the issue of notice. Causation is a separate issue, is probably irrelevant to this case, and obviously cannot be

the focus of the testimony. The Court will not allow co-worker testimony to evolve into mini-trials; such testimony must be focused on notice.

## VI. DOCTORS' AND PHYSICAL THERAPISTS' STATEMENTS

35. BNSF asserts that any statements made by Plaintiff's medical providers to Plaintiff are hearsay, and Willis should not be allowed to testify about those statements. Willis responds that BNSF's defense of failure to mitigate is based on Willis's failure to follow the advice of those providers by taking part in physical activities that delayed his recovery. That entirely misses the point.

A statement made by a medical provider to Willis can be proved by the provider who made the statement. Testimony from both Willis's physician and his physical therapist will be presented. To the extent supported by that testimony, Willis can certainly testify that when he participated in wrestling or rode his bicycle he was following advice from his physician and/or therapist without testifying directly about what that physician's advice entailed. That totally eliminates the hearsay problem.

If there is nothing in the testimony of the providers to support Willis's testimony that he was following medical advice, then Willis's iteration of statements they made to him is classic hearsay: he would be testifying about another person's unsworn statement and he would be offering those statements to prove the truth of his statement that they advised him to take specific actions.

Whether Willis can offer such testimony depends on the testimony of the providers. The Court does not have enough information at this time to determine whether the hearsay problem can be avoided. But it is clear that Willis himself cannot testify about what his medical providers told him. To that extent the motion is granted.

## VII. EVIDENCE OF DEFECT OR IMPROPER FUNCTION OF HAND BRAKES

36-38. When this Court was considering BNSF's motion for summary judgment, BNSF relied on the testimony of Plaintiff's expert that the hand brake was not defective but rather that it operated on the date in question as it ordinarily did. That testimony in turn was based on evidence that hand brakes had a common tendency to slip when being tied and that everyone – employees and management alike – was aware of this tendency: it was a consequence of the design of the brake. The Court concluded that just because a hand brake is not "defective" does not mean that it is safe. Because it is Willis's burden to show that BNSF did not provide a "safe" workplace, the lack of "defect" in the hand brake was not sufficient to support entry of summary judgment on the FELA claim.

BNSF goes too far in asking that Plaintiff be barred from introducing evidence "that the hand brake was defective, worked improperly, or failed to function in the normal, natural and usual manner." The issue in this case is whether the slippage of the hand brake was sufficient to create an unsafe workplace. Witnesses for either party can describe how a hand brake is supposed to work and what happens when it slips. They can describe what they saw, heard and felt when it slips. They can relate what they did when it slipped – who they told or what paperwork they completed. What they may not do is *characterize* what happened as a "defect," or as "improper" function or as "normal" function. The goal is to prove or to disprove the existence of an unsafe condition. Whether either party meets that goal is up to the jury to decide. To that extent only, the motion is granted.

## VIII. WORK LIFE EXPECTANCY

39-44. BNSF asks that Plaintiff be barred from offering evidence on future lost wages or loss of future work life expectancy. Willis does not intend to offer any such evidence. The motion is therefore granted.

## IX. OTHER EMPLOYEES' INJURIES

44-56. BNSF asks that Willis be barred from offering evidence of, arguments concerning, exhibits identifying, or references to other employees' alleged injuries while using a hand brake. This argument is very similar to the argument made regarding co-workers' statements about their own injuries. To the extent there is overlap, the ruling on that issue remains as stated above.

The Court disagrees, however, with Plaintiff's assertion that this part of the motion is merely "duplicative" of the earlier argument. It is not; it is broader because it seeks to preclude *any* type of evidence, testimony or argument about anyone's injury other than Willis's injury. In particular, it appears that this argument is focused on preventing Willis himself from testifying about other employees' purported injuries.

BNSF provides a number of reasons that this evidence should be barred. The Court feels compelled to note first an argument not presented, namely that Plaintiff must have personal knowledge before he can testify about something. FRE 602. If all Willis knows is what someone else told him or what he has heard – that another employee was injured, how he was injured, the injury itself – then he has no basis for testifying. That is the simplest explanation for the limitations on Willis's testimony about other employees' injuries.

Even if he were able somehow to show the requisite personal knowledge, however, Willis would have to show enough evidence of factual similarity to his own situation to make this type of evidence relevant. FRE 401, 402, 403. That would require mini-trials about each of

the other employees. The Court has no intention of allowing this trial to become a conglomeration of mini-trials.

Because it is so doubtful that Willis is competent to testify about this matter, the Court expresses at this time no opinion about the level of similarity that would be required. Should there be any intent on Plaintiff's part to offer this type of testimony, Plaintiff shall immediately notify the Court by filing a motion that provides sufficient information for the Court to make a more extensive ruling. At this time, however, the motion is granted to the extent that it seeks to exclude Willis's testimony about other employees' injuries as a result of hand brake operation.

It is not clear to the Court how else Willis might try to offer evidence of other employees' injuries beyond the two situations[2] addressed in this Order, namely through the testimony of those other employees and through Willis's own testimony. If there is a suggestion that Willis intends to present such evidence via some other witness, BNSF may bring this to the Court's attention, either by filing an appropriate motion at this time or by raising it promptly at trial.

## X. OPINION TESTIMONY ON SAFETY OF PARTICULAR METHOD

57-61. At first blush, this argument appears to harken back to the earlier section in which BNSF asked the Court to bar evidence of subsequent remedial measures. It does not. The earlier section of this Order found admissible evidence that BNSF began to allow brake sticks *after* Willis's injury, for the limited purpose of showing feasibility. In this section of the motion, BNSF focuses on specific testimony that might be offered that BNSF should have provided Plaintiff with a brake stick *before* his injury.

---

[2] There is a third possibility – that Willis's expert witness, Gary Mallen, will testify about other employee injuries. This possibility is governed by the section below, in which BNSF seeks to exclude Mallen's testimony.

BNSF quotes Willis's deposition testimony to the effect that a brake stick "doesn't require as much force to tie the hand brake." Willis can certainly make that common sense statement, based on his own experience. BNSF is of course free to question him about the details of his use of a brake stick. This statement does not require expert testimony; it is sufficiently grounded in Willis's personal knowledge and experience and that lay testimony is permissible. To this extent the motion is denied.

BNSF then quotes Willis's expert's testimony that (1) even with the use of brake sticks, Willis's injury "very possibly" could still have occurred; and (2) that industry evidence is mixed regarding use of brake sticks; and (3) that there have been a lot of injuries in the industry involving the use of brake sticks. Although not explicit, BNSF appears to insinuate that the expert's testimony makes Willis's testimony wholly admissible about these questions. While the expert's testimony may give BNSF grounds for vigorous cross examination of Willis, it does not go to admissibility. Willis may testify about the relative uses of force in the two methods of tying a hand brake.

The questions whether this alternative method of tying a hand brake is "safer, or whether the alternative method would have "prevented" Willis's injury are questions of science and/or medicine, quintessential subjects of expert opinion. Willis himself is unqualified to present such testimony (FRE 701). Whether his expert's testimony on those issues meets the requirements of *Daubert* is another question. It is considered below.

## XI. 20109 CLAIM

62-67. BNSF asks the Court to bar Plaintiff from offering any evidence of his "original or amended whistleblower complaint" under 49 USC §20109 or any evidence of retaliation.

This case was filed on June 2, 2011. Before it was filed, Willis filed a "Whistleblower Complaint" with OSHA. He amended that complaint on Nov. 1, 2011. On June 4, 2012, Plaintiff filed a "Notice of Intention" to file that whistleblower complaint in District Court. At no time has Willis filed such a claim in this case. In fact, his counsel objected to certain questioning at Willis's deposition, asserting that while the questioning was not relevant to the FELA claim, it could be relevant to the "separate whistleblower claims….which are not part of this action."

Willis states that he has no plan to present these allegations in this trial, although he reserves his right to do so if BNSF opens the door. Because these claims are not part of this litigation, neither party will be allowed to introduce such evidence. The motion is granted.

## XII. ADVANCES

68-70. BNSF asks the Court to bar Plaintiff from offering evidence that BNSF paid him advances for living expenses while he was working light duty or not working. BNSF made certain advances, subject to the proviso that they were not an admission of fault or liability and subject to the agreement that Plaintiff would re-pay the advances in the event of settlement or verdict on his claim in this suit.

Willis states that he does not plan to present such evidence unless BNSF opens the door. The motion is granted.

## XIII. EXCLUSION OF EVIDENCE AND WITNESSES NOT PREVIOUSLY DISCLOSED

71-75. BNSF asks the court to bar Plaintiff from offering into evidence any documents or witness not disclosed pursuant to FRCP 26, unless they are used strictly and solely for impeachment purposes.

This motion is specifically directed to Ruth Frese, Willis's self-described "significant other," because she was not disclosed pursuant to FRCP 26. While it is generally true that

18

disclosure is required, Plaintiff points out that he was asked during his deposition whether he discussed his shoulder discomfort with anyone. His response was to identify Ruth Frese.

A party must supplement or correct an earlier Rule 26(a) disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FRCP 26(e)(1)(A).

Willis's disclosure of Frese during his deposition satisfies his obligations under Rule 26. To the extent that this motion is directed at Frese, and to the extent that her testimony relates only to the subject[s] revealed during Willis's deposition, the motion is denied. She is not barred as a witness for this reason.

No other specific issues with non-disclosure have been identified. Plaintiff does not oppose the concept that documents not previously disclosed can be used for impeachment only. Obviously both parties are bound by the Rules. No ruling is required to enforce this proposition in the general sense.

## XIV. ADMISSIBILITY OF FRA REPORTS

76-78. BNSF asks the Court to bar Plaintiff from offering into evidence FRA Reports. Plaintiff has obtained two documents reporting his injuries (1) SAF51658 – Supervisor's Report of Employee Injury or Illness; and (2) a printout of information taken from FRA Form F6180.55A.

Railroads are required to report monthly to FRA "all accidents and incidents resulting in injury or death to an individual…" 49 USC 20901. Use of those reports is strictly limited:

> No part of an accident or incident report filed by a railroad carrier under section 20901 of this title or made by the Secretary of Transportation under section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report.

19

49 USC §20903. The regulations governing the use of these reports include the following language: "The Employee Human Factor Attachment, Notice, and Employee Supplement under § 225.12 are part of the reporting railroad's accident report to FRA pursuant to the 49 USC 20901" and fall with the scope of the prohibition of their use in civil matters. 49 CFR § 225.7. In *Villa v BNSF*, 397 F3d 1041, 1047 (8th Cir 2005), the Court refused to extend the statutory privilege to BNSF's internal reports and forms. Accord, *Kehdi v BNSF Railway Co*., 2007 WL 2994600 (D OR). The Court has located no authority to the contrary.

The two documents Willis has obtained are not the FRA reports themselves. Section 20903 only protects the FRA reports themselves. The motion is denied.

## XV. PLAINTIFF'S EXPERT GARY MALLEN

79-101. In this motion, BNSF asks the Court to bar *all* testimony from Plaintiff's expert witness Gary Mallen. In its clarification memo, BNSF states that all six of Mallen's opinions were rendered inadmissible by this Court's summary judgment motion.

In its motion in *limine*, BNSF has argued about specific portions of Mallen's testimony. No challenge to his general qualifications was raised; where challenges were raised, they were raised in the context of his qualifications to render a specific opinion. This Order shall not be construed as a bar of *all* of Mallen's testimony. The Court does not know (and cannot ascertain without reading Mallen's entire deposition testimony and analyzing the issue without briefing) whether Mallen has testified about matters that were not challenged in this motion. Accordingly, the scope of this part of the Order is strictly limited to the specific issues raised by BNSF in the motion *in limine*.

An expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as the witness's qualifications, including a

list of all publications authored in the previous 10 years." FRCP 26(a)(2)(B)(i), (iv). If the expert's opinions or qualifications as to a particular issue are not disclosed as required by Rule 26, the expert may not testify as to that issue unless the non-disclosure was "substantially justified or is harmless." FRCP 37(c)(1); *Musser v Gentiva Health Services*, 356 F3d 751 (7th Cir 2004)[3]. An expert may not testify as to opinions that are new or that contradict those expressed in his report, unless there is a substantial justification for interjecting those new opinions at a late stage of litigation. See, for example, *Salomon v Cincinnati Ins. Co.*, 2013 WL 3155405 (ND IN).

Gary Mallen states in his Report that he has spent over 19 years supervising Car Department/Mechanical personnel:

> on repair tracks shop area and in the field in the inspection and repair of rail cars, including the inspection, repair and operation of rail car hand brakes based on FRA and AAR Rules and Regulation. This also included personally assisting trainmen in yard operations with hand brake issues. I was trained in the Dupont assisted safety processes including but not limited to Safety Action Plans/Job Safety Analysis and the responsibilities a Manager has with regard to safety.

Report, Exh. 9 to Motion in Limine (Doc. 69-9 at p.4). He states that he was retained for the following purpose:

> to express my professional mechanical opinion regarding the relevant physical condition to rail car UCEX 2127 which existed and or contributed to the injuries sustained by the Plaintiff on April 22, 2009 and to determine what preventative measures, if any, could have or should have been taken by the Defendants to minimize the risk of an injury.

Id. at p.2.

---

[3] The wording of FRCP 37(c) was amended after *Musser*. The re-wording did not affect the viability of the holding in *Musser*.

Mallen's Report includes a section titled "Observations and Conclusions" (Id at pp.8-9) and another section titled "Opinions." Id at p.9. The Observations and Conclusions section includes the following statements (which the Court has numbered for the sake of efficiency):

> 1. BNSF was aware of chain binding, bunching and then brake slipping. They advised employees of it in there [sic] rules and Mr. Willis's supervisor was also aware of it.

> 2. BNSF was aware of increased injuries while operating hand brakes prior to April 22 of 2009.

> 3. Mr. Willis followed BNSF safety rules when applying the hand brake on rail car UCEX 2127.

> 4. Mr. Willis followed the steps for applying the hand brake as viewed in the DVD…and adopted by BNSF with the exception that he observed the hand brake during operation and was not looking away from the hand brake.

> 5. The hand brake on rail car UCEX 2127 did not operate efficiently while Mr. Willis was attempting to set the brake because the chain bound up and then the wheel slipped. Testimony clearly reflects a hand brake is not supposed to act in that manner.

> 6. At the time Mr. Willis was applying the brake and when the chain bound and then the wheel slipped the hand brake was inefficient.

> 7. I have experienced hand brake chain bunching and wheel slip throughout my railroad career. I have applied thousands of hand brakes. I have had the hand brake perform efficiently after the chain bound and the wheel slipped in the same fashion as occurred to the plaintiff. I have also had to bad order the hand brakes for continued chain binding and wheel slip.

> 8. When I applied the hand brake on any type of car from the brake step and ladder rung having a vertical wheeled hand brake I could not observe the chain wrapping around the gear inside the hand brake. As you tighten up the hand brake, the chain gets tighter and tighter. You have to assume its [sic] working properly, then you cinch it down.

The Report discloses the following six opinions (which the Court has numbered for the sake of efficiency):

> 1. Rail car UCEX 2127 was in violation of 49 USCA 20302(a)(1)(B) at the time the plaintiff was applying the brake because it was inefficient and did not operate by design.
>
> 2. Rail car UCEX 2127 was in violation of 49 CFR 213.1(a), 9 CFR 231.2(a) and 49 CFR 231.27(a)(1)(ii) because the hand brake did not operate efficiently when it was applied by the plaintiff.
>
> 3. BNSF was, prior to the incident, well aware of chain binding, bunching and wheel slip. They were also aware of increased hand brake incidents.
>
> 4. BNSF determined that the sole cause of this injury was overexertion on the part of the plaintiff, [sic] however it was not proven and the plaintiff was proven to have not violated any of BNSF's rules.
>
> 5. Mr. Willis followed all BNSF rules and procedures when attempting to apply the hand brake on UCEX 2127.
>
> 6. BNSF failed to provide the plaintiff with a reasonably safe work environment in that they had prior knowledge of hand brake issues involving chain binding and brake wheel slip [sic] and no steps were taken to prevent or minimize the problem.

BNSF asks the Court to bar several categories of Mallen's testimony. The first category is all testimony regarding the "efficiency" of the hand brake. BNSF's argument on this point rests on the earlier grant of summary judgment in favor of BNSF as to the FSAA claim. According to BNSF, the issue of "efficiency" is relevant only to the now-dismissed FSAA claim. The issue has now dropped out of the case entirely, and Mallen's opinions on this topic are no longer relevant.

As the Court explained in the summary judgment order of March 13, 2013 (Doc. #55), the FSAA requires (as is pertinent here) that all railroad cars be equipped with "efficient" hand

brakes, which means that they are "adequate in performance; producing properly a desired result." Plaintiff had produced no evidence that the hand brake was not efficient, because it operated on the date in question as it normally did. The fact that slippage occurred on that date was not unusual; for the chain in the hand brake to bind up and then slip was a common and well-known occurrence. Slippage was not due to a defect or a lack of efficiency. That finding precluded the FSAA claim, and summary judgment was granted in favor of BNSF on that claim. That finding did not, however, preclude the FELA claim, because what FELA requires is a safe workplace, and if a piece of equipment routinely and normally operates in a dangerous way, then that could be reasonably construed as negligence, which is actionable under FELA.

The issue in this FELA trial will be the safety of the workplace, given the fact that the hand brake routinely slipped. The issue will not be whether this slippage was "inefficient;" that is the very issue the Court has already decided. No witness will be able to characterize the operation of the hand brake as "inefficient." That does not mean that witnesses will be precluded from testifying about the tendency of the hand brake to slip or from describing what happens when it slips. It simply means that "efficiency" is not an issue and testimony on it will not be allowed.

That holding precludes Gary Mallen's opinions, conclusions and testimony regarding "efficiency". Accordingly, any of Mallen's testimony based on Conclusions 5 and 6 and on Opinions 1 and 2 of his Report, is barred.

The second category of Mallen's testimony that BNSF challenges is his testimony about BNSF's training of Willis. None of the Conclusions or Opinions deal with BNSF's training of Willis. Despite the failure to disclose such opinions, Mallen testified at his deposition that BNSF could have offered additional training to Willis, which would have possibly prevented this

injury. His testimony about training is not allowed because he failed to disclose an opinion about it in his Report.

In addition to that very basic reason, Mr. Mallen is unqualified to testify about Willis's training. When questioned, Mallen stated that he has never been a conductor, did not know what training is offered to conductors, and did not know anything about the training Willis received. (Mallen Deposition at 47-48). He concluded by saying that he "assume[d] that …he's trained on … how to operate a hand brake, what to look for, you know initially for something wrong with the hand brake." (*Id* at 51). Nothing in Mallen's *curriculum vitae* would supplement the lack of knowledge demonstrated by this interchange. This testimony is nothing more than unscientific speculation, see, *Cummins v Lyle Industries,* 93 F3d 362 (7th Cir 1996). Mallen may not testify about Willis's training specifically or about training generally.

BNSF also challenges Mallen's deposition testimony about the design of the hand brake. No Conclusion or Opinion in his Report mentions anything about the design of the hand brake. Once again, for that reason alone this testimony is barred. Additionally, Mallen admitted in his deposition that he has no expertise in the design of hand brakes for railcars (Dep. 7-74). His *curriculum vitae* reveals no background in engineering or any other helpful scientific design field that would qualify him to testify about the design. He is a mechanic, trained in repair, inspection and operation of, *inter alia*, hand brakes. Nothing in his experience deals in any way with the underlying design. This is not to be construed as a ruling that Mallen cannot testify about the undisputed facts that the chains in hand brakes often bound up or that the wheel slipped when that happened; it simply means that he is not qualified to testify that there was some flaw in the design of the hand brake.

There is another reason Mallen's testimony regarding design is barred. Even if the Court were to assume that he was qualified to testify on this issue and that his report had included an opinion on this question, an expert may not give such testimony when the design in question meets federal requirements. See, e.g., *McGinn v Burlington Northerns Railroad Co.*, 102 F3d 295 (7th Cir 1996); *Oglesby v Delaware and Hudson Railway Co.*, 180 F3d 458 (2d Cir 1999); *Sindoni v Consolidated Rail Corp.*, 4 FSupp2d 358 (MD PA 1996); *Ferren v National Railroad Passenger Corp.*, 2001 WL 1607586 (ND IL). Mallen's testimony provides no evidence (and Plaintiff has provided none) that the hand brake was deficient under the applicable federal regulations (49 CFR 231.1, 231.2 and 231.27). In the absence of such evidence, Mallen may not testify that the hand brake's design fell short. Such testimony is barred as precluded by the federal standards applicable.

For any and all of these reasons, Mallen's testimony about design is barred as failing to meet the requirements of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, *Daubert*, and federal law.

BNSF next asserts that Mallen relied on improper materials. The rules of evidence allow an expert to rely on inadmissible evidence, but the evidence must be a type of evidence on which "experts in the particular field would reasonably rely." FRE 703. Moreover, any such inadmissible facts on which an expert relies "may not be disclosed to the jury … unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." *Id.*

In his deposition, Mallen referenced several documents that he had found on the internet. These documents included BNSF Employee Safety Programs, which he described as talking about BNSF's "35 full-time safety managers who develop and oversee a system wide safety

process, which to me sounds very similar to the E.I.du Pont process." He went on to describe what the document called BNSF's "closed-loop safety process, a systematic process for identifying … and eliminating at-risk work behaviors and environmental concerns at each BNSF location by using work practices observations and strategic interventions.." Mallen himself referred to this process as "safety audits." (Mallen Dep. at p.52-54).

He also testified that he relied on internet materials from a diesel shop in Nebraska, which during his deposition he agreed would not apply to conductors. *Id* at 55. He then located on the internet the BNSF Employee Magazine of Team, dated May/June 2008 that related back to the diesel shop and that discussed overexertion from operating hand brakes. Although he stated at first that this suggested BNSF was conducting safety audits, he concede that he had not reviewed any detail that said they did. He said that the statistical information he received from BNSF before Willis's injury that indicated safety audits had never been conducted as to hand brakes, even though setting hand brakes is done all over the country on a daily basis. He suggested that maybe BNSF should have done that and then determined that if a hand brake shows slippage, the railcar should be taken out of service. He then acknowledged that this has happened nowhere in the industry because it would "tie up half the cars in the country."

BNSF asserts first that the materials relied on by Mallen to opine on "safety audits" are not "reputable in the field of safety expertise" and do not provide authority for such opinions. In addition, BNSF points out that Plaintiff did no discovery on "safety audits," so Mallen would have no factual basis for claiming that the protocol was inadequate.

The first and most significant *Daubert* factor is whether a scientific theory has been subjected to the scientific method. There is nothing Mallen's testimony on the issue of safety audits that remotely approaches a scientific method in the first place. To opine on a BNSF's

safety protocol by reading a few internet documents, without reviewing (or even seeking[4]) any documents or statistics about the safety protocol is to speculate. Mallen may not testify about BNSF's safety audits or safety protocol.

Next BNSF challenges Mallen's deposition testimony referring to the fact that other people had incurred injuries tying down hand brakes. His Report includes both Conclusions and an Opinions that BNSF was aware of the slippage and of resulting injuries. As a long-time railcar mechanic involved in accident investigations, it is probable that Mallen has come across other injuries that were somehow connected to hand brakes. If he has such personal knowledge, he may certainly rely on that knowledge in support of an opinion. The fact that he did or did not have statistical information about whether any such injuries at BNSF is a matter for cross examination; it does not go to admissibility or qualifications under *Daubert*. To that extent the motion is denied.

Entered: October 2, 2013

s/ John A. Gorman

John A. Gorman
U.S. Magistrate Judge

---

[4] Willis argues that BNSF has produced no evidence that it conducted safety audits, but BNSF asserts that Willis did no discovery on safety audits. The burden of proof rests with Plaintiff; if there was no discovery on this question, then the lack of documentation is Plaintiff's problem in proof, not BNSF's problem in defense.